IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RONALD GIT SUM AU,<br><br>                    Plaintiff,<br><br>     vs.<br><br>TRUSTEES OF THE ESTATE OF<br>BERNICE PAUAHI BISHOP, et al.<br><br>                    Defendants. | CIVIL NO. 20-00218 JAO-WRP<br><br>**ORDER GRANTING<br>DEFENDANTS' MOTION TO<br>DISMISS** |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

In this latest iteration of a property dispute that has already been the subject of four separate actions in Hawaiʻi state court, Plaintiff Ronald Git Sum Au ("Plaintiff") brings state and federal claims against Defendants Trustees of the Estate of Bernice Pauahi Bishop, also known as Kamehameha Schools ("Kamehameha Schools") and its property manager, Kawika Burgess ("Mr. Burgess"); Cades Schutte LLP, and one of its attorneys, Dennis W. Chong Kee (together, "Attorney Defendants"); and retired State Circuit Court Judge Rhonda Nishimura ("Judge Nishimura").  The Attorney Defendants filed a motion to dismiss, which Kamehameha Schools and Mr. Burgess joined, and Judge Nishimura moved separately to dismiss the action.  The Court elects to decide the

motions without a hearing pursuant to Local Rule 7.1(c).  For the reasons stated below, the Attorney Defendants' motion is GRANTED.

## I.     BACKGROUND

### A.     Facts

The controversy underlying this action is a landlord-tenant dispute over a parcel of land located in Honolulu that Kamehameha Schools leased to Plaintiff. *See* ECF No. 7 (First Amended Complaint, "FAC") ¶¶ 11–13.  In 2010, those two parties filed competing lawsuits against one another in Hawai'i state court ("First Round Cases") each alleging the other had breached the lease agreement.  *See id.* ¶ 14; *see also* ECF Nos. 15-3, 15-4, 15-5.  The Attorney Defendants represented Kamehameha Schools in those actions, one of which was before Judge Nishimura. *See* FAC ¶ 14; ECF Nos. 15-3, 15-5.  The First Round Cases were dismissed with prejudice after the parties reached a settlement agreement.  *See* FAC ¶ 14; ECF Nos. 15-6, 15-7.

In 2013, Kamehameha Schools filed another suit against Plaintiff in state court, and were again represented by the Attorney Defendants, alleging Plaintiff breached the settlement agreement; Plaintiff counterclaimed ("Second Round Case").  *See* ECF Nos. 15-8, 15-10.[1]  Judge Nishimura, again the presiding judge,

---

[1]  Plaintiff's counterclaims included, e.g., breach of the settlement agreement;

(continued . . .)

granted summary judgment in Kamehameha Schools' favor, terminated the lease, awarded Kamehameha Schools damages, fees, and costs, and dismissed Plaintiff's counterclaims.  *See* ECF Nos. 15-9, 15-13.  Final judgment entered in 2015.[2]  *See* ECF No. 15-14.  In this federal action, Plaintiff alleges Judge Nishimura committed various errors in entering judgment for Kamehameha Schools in the Second Round Case, for example because she disregarded the lease agreement and was privy to confidential communications regarding the settlement and resolution of the First Round Cases.  *See, e.g.*, FAC ¶¶ 20, 38.  Plaintiff again alleges in this federal action that Kamehameha Schools, Mr. Burgess, and the Attorney Defendants fraudulently induced him to agree to the settlement agreement and dismiss the First Round Cases, and themselves breached the settlement agreement, for example by withholding consent to Plaintiff's assignment of the lease and improperly requiring a potential assignee to disclose financial information.  *See,*

---

(. . . continued)
unreasonable withholding of consent of assignment; a request to have the settlement agreement be declared void and unenforceable; breach of the covenant of good faith and fair dealing; intentional or negligent misrepresentation; fraudulent inducement with regard to the settlement agreement; tortious interference with third-party contract; and unfair and deceptive practices.  *See* ECF No. 15-10.

[2]  Around this time, Plaintiff also sued Mr. Burgess in state court ("Third Round Case").  *See* ECF No. 15-43.  The case was stayed, but the state court recently dismissed the action based on res judicata, although a final judgment has not yet been entered in that action.  *See* ECF Nos. 15-45, 15-46.

*e.g.*, FAC ¶¶ 25–30, 35–38.  The Hawaiʻi Intermediate Court of Appeals ("ICA") affirmed Judge Nishimura's judgment in the Second Round Case in 2017 and 2018, and the Hawaiʻi Supreme Court denied certiorari in 2018.  *See* ECF Nos. 15-28, 15-31, 15-36.

After Judge Nishimura entered final judgment in the Second Round Case, and while the merits of that action were still pending on appeal, two issues arose that form the crux of Plaintiff's federal claims here.  First, in February 2016, Judge Nishimura granted Kamehameha Schools' motion to declare Plaintiff a vexatious litigant, and imposed certain requirements on Plaintiff before he could file future motions.  *See* ECF No. 7-11.  Next, in April 2016, Plaintiff learned about a case in federal court, *Quinata v. Nishimura*, which was unrelated to the parties' dispute except for the fact that both Judge Nishimura and Cades Schutte were named as co-defendants.  *See Quinata v. Nishimura*, Civil No. 13-00339 JMS-RLP, 2013 WL 5503108 (D. Haw. Oct. 2, 2013), *aff'd*, 608 F. App'x 550 (9th Cir. 2015); *see also* FAC ¶ 22.

Based on what he perceived as an impermissible conflict arising from Judge Nishimura's status as a co-defendant with Cades Schutte while Cades Schutte was appearing before her on behalf of Kamehameha Schools in the Second Round Case, Plaintiff sought to have Judge Nishimura recused or disqualified from the Second Round Case under Hawaiʻi Revised Statutes ("HRS") § 601-7 and the

4

Hawaiʻi Revised Code of Judicial Conduct.  In May 2016, Plaintiff filed a mandamus petition to recuse or disqualify Judge Nishimura and vacate or reverse and remand the judgment and summary judgment orders in the Second Round Case, *see* ECF Nos. 15-51 at 7, 15-52; the Hawaiʻi Supreme Court denied the petition, *see* ECF No. 15-53.  Meanwhile, Plaintiff also filed a series of requests before Judge Nishimura (now subject to the requirements of the vexatious litigant order) arguing she should be disqualified or must recuse herself based on *Quinata* and that her orders had been tainted by this conflict, *see* ECF No. 15-27; Judge Nishimura denied these requests, *see* ECF Nos. 15-18, 15-19, 15-27.  Plaintiff appealed, also asking the ICA to reverse and remand the judgment in the Second Round Case on the merits.  *See* ECF Nos. 15-34 at 48.  The ICA ruling noted that the merits appeal had been decided and the summary judgment orders affirmed *de novo*, and dismissed the request regarding recusal/disqualification as moot because Judge Nishimura had retired.  *See* ECF No. 15-38.  The Hawaiʻi Supreme Court denied Plaintiff's application for certiorari.[3]  *See* ECF No. 15-41.

---

[3]  This was not the first time Plaintiff presented these arguments.  In his appeal of the judgment of the Second Round Case on the merits, Plaintiff unsuccessfully raised the *Quinata* issue before both the ICA and the Hawaiʻi Supreme Court, including by moving for reconsideration of the ICA decision on that basis and asking both the ICA and the Hawaiʻi Supreme Court to stay the judgment pending review of his appeal of the requests to recuse/disqualify.  *See* ECF Nos. 15-21 at 6–8; 15-22 at 6–7; 15-25 at 22; 15-26; 15-28 at 7 n.3; 15-29 at 3; 15-30; 15-31; 15-32 at 6–7, 10–11; 15-35 at 1–6; 15-36.

Around the same time that Plaintiff appealed Judge Nishimura's orders regarding recusal/disqualification, he also appealed her vexatious litigant order. Although the ICA affirmed that order, *see* ECF No. 15-37, the Hawaiʻi Supreme Court reversed, *see* ECF No. 15-42; however, in doing so it did not reverse the final judgment in the Second Round Case, *see id.*  In that appeal, Plaintiff also filed a motion for reconsideration with the Hawaiʻi Supreme Court, asking it to enforce his rights under the U.S. and Hawaiʻi Constitutions, enforce HRS § 601-7 requiring Judge Nishimura to provide a hearing where disqualification/recusal is denied, and under HRS § 634J-7(b) requiring an "after hearing" in determining a vexatious litigant's prefiling motion; the Hawaiʻi Supreme Court denied that motion.  *See* FAC ¶¶ 53, 66; ECF Nos. 7-16; 7-17.

Finally, and most recently, in 2018, Plaintiff again sued Kamehameha Schools and the Attorney Defendants in state court ("Fourth Round Case").  *See* ECF No. 15-47.  In the Fourth Round Case, Plaintiff again alleged Judge Nishimura should have recused herself or been disqualified in the Second Round Case based on *Quinata*, claiming the merits would have been resolved differently had she done so.  *See, e.g.*, *id.* ¶ 16.  Plaintiff also alleged Defendants conspired to prevent him from seeking Judge Nishimura's recusal by concealing *Quinata* and declaring him a vexatious litigant, which impacted his ability to file a motion for recusal/disqualification and violated his due process rights.  *See id.* ¶ 19.  The

Fourth Round Case was dismissed with prejudice (concluding, among other things, that *Quinata* did not require Judge Nishimura's recusal/disqualification and that there was no inference the result would have been different had she been recused/disqualified), and final judgment was entered against Plaintiff.  *See* ECF Nos. 15-49; 15-50.

In this federal action, aside from the complaints discussed above about certain Defendants' conduct in reaching the settlement in the First Round Cases and bringing and resolving the Second Round Case, Plaintiff also repeats the allegations that Defendants conspired to conceal the *Quinata* case and have him declared a vexatious litigant so that he would be unable to move for Judge Nishimura's recusal/disqualification.  He contends this caused him harm and denied him a full and fair opportunity to be heard in the Second Round Case such that it should have no preclusive effect here.  *See, e.g.*, FAC ¶¶ 23, 32, 45–46, 48–49, 51, 54, 56, 58–59, 66.

**B.     Procedural History**

Plaintiff filed a First Amended Complaint, setting out the following state law claims:  fraudulent inducement, intentional or negligent misrepresentation; fraudulent concealment, non-disclosure, deceit; and breach of the implied covenant of good faith and fair dealing.  *See* FAC.  The FAC is otherwise difficult to follow; for example, Plaintiff repeatedly takes issue with Judge Nishimura's interpretation

and application of Hawai'i statutes related to vexatious litigants (HRS § 634J-7(b)) and disqualification or recusal (HRS § 601-7), as well as the Hawai'i Revised Code of Judicial Conduct; however, it is unclear whether he seeks to ground any separate state law claims in these objections. *See id.* And although not set forth in separate counts, Plaintiff makes repeated scattered references to 42 U.S.C. §§ 1982, 1983, and 1985, as well as violations of his rights under the Fifth and Fourteenth Amendments, including due process violations, violations of the Takings Clause, and equal protection violations. *See id.*

The Attorney Defendants move to dismiss the FAC on the grounds that the Court lacks subject matter jurisdiction over Plaintiff's federal claims under the *Rooker-Feldman* doctrine or, alternatively, that Plaintiff failed to state any federal claims, and that Plaintiff's state law claims should also be dismissed. *See* ECF No. 15. Kamehameha Schools and Mr. Burgess join in that motion. *See* ECF No. 16. Judge Nishimura moves to dismiss the FAC arguing that Plaintiff fails to state any claims against her and, in any event, that such claims are barred by judicial immunity. *See* ECF No. 17.

## II.    LEGAL STANDARD

The *Rooker-Feldman* doctrine addresses jurisdiction and is thus analyzed under the Rule 12(b)(1) standard. *See Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003). Because federal courts have limited subject-matter jurisdiction, the plaintiff

8

bears the burden of establishing jurisdiction.  *See Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).  Dismissal is warranted when the plaintiff fails to meet his burden.  *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).  The Court may rely on evidence submitted outside of a complaint to resolve factual disputes concerning the existence of jurisdiction, *see McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988), and may take judicial notice of "documents on file in federal or state courts," *Harris v. County of Orange*, 682 F.3d 1126, 1131–32 (9th Cir. 2012).[4]

## III.   DISCUSSION

The *Rooker-Feldman* doctrine precludes "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  Under *Rooker-Feldman*, the district court lacks subject matter jurisdiction over lawsuits that are de facto appeals of state court judgments. *See Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013).  "A de facto appeal exists when a federal plaintiff asserts as a legal wrong an allegedly erroneous

---

[4]  The Court previously rejected Plaintiff's argument that he is entitled to discovery or that the Attorney Defendants' motion must be converted into one for summary judgment merely because it cites to and relies on state court documents, which are properly subject to judicial notice.  *See* ECF No. 35.

decision by a state court, and seeks relief from a state court judgment based on that decision." *Id.* (internal quotation marks and citation omitted).  If a federal plaintiff's claims are, in part, a de facto appeal, then *Rooker-Feldman* also bars any additional claims inextricably intertwined with an issue resolved by the state court decision from which the forbidden de facto appeal is taken.  *See Cooper v. Ramos*, 704 F.3d 772, 778–79, 782 (9th Cir. 2012).  A claim is inextricably intertwined when, to succeed, the federal court would have to determine the state court wrongly decided the issues before it and would thus undercut that state court ruling or effectively void it.  *See id.*

Plaintiff's federal claims amount to a forbidden de facto appeal.  First, he asserts as a legal wrong allegedly erroneous decisions by a state court and relies on those wrong decisions as the primary evidence for his federal claims.  Those federal claims are premised on the notion that Defendants colluded and conspired with Judge Nishimura in the Second Round Case not to disclose their status as co-defendants in *Quinata*.  *See, e.g.*, FAC ¶¶ 23, 32.  The aim of this alleged conspiracy was to preclude Plaintiff from seeking to disqualify Judge Nishimura, who should have been disqualified or recused herself.  *See id.* ¶¶ 23, 32, 43, 45C, 45D, 45F, 45G, 46, 48–51, 56, 58.  Plaintiff asserts that Judge Nishimura unlawfully used and misinterpreted Hawaiʻi law in her order finding Plaintiff to be a vexatious litigant that set forth requirements for future motions (which denied

10

him due process, equal protection of the law, and otherwise undermined his ability to seek recusal or disqualification), and misinterpreted Hawaiʻi law in denying his request for recusal or disqualification, all of which resulted in Judge Nishimura's judgment in the Second Round Case in favor of Defendants remaining in effect. *See id.* ¶¶ 23, 32, 43, 45C, 45D, 45F, 45G, 46, 48–51, 56, 58.  Thus, Plaintiff points to Judge Nishimura's concealment of *Quinata*, erroneous vexatious litigant order and disqualification/recusal order, and alleged erroneous and tainted merits order, as evidence of Constitutional and federal violations.  In doing so, he necessarily also implicates as erroneous the other state court rulings that either declined his requests to disqualify Judge Nishimura or upheld her rulings on the merits in the Second Round Case.[5]

Second, Plaintiff seeks relief from a state court judgment in light of these allegedly erroneous decisions.  Most plainly, he claims that in light of Judge Nishimura's violations, he was deprived a full and fair opportunity to be heard in

---

[5] This would include, e.g., the Hawaiʻi Supreme Court's denial of mandamus in the Second Round Case that sought disqualification and to set aside the final judgment; the ICA and Hawaiʻi Supreme Court orders denying his requested relief mentioning *Quinata*, including a request to reverse the judgment and remand for trial; and the dismissal with prejudice of the Fourth Round Case.  Plaintiff does not object that the mandamus action is sufficiently final for *Rooker-Feldman* purposes, *see* ECF No. 15-1 at 26 (citing *Mothershed v. Justices of the Sup. Ct.*, 410 F.3d 602, 604 n.1 (9th Cir. 2005)), and his argument that the Fourth Round Case is not sufficiently final because its appeal is pending is incorrect, *see Exxon*, 544 U.S. at 284, 292; *Worldwide Church of God v. McNair*, 805 F.2d 888, 893 n.3 (9th Cir. 1986).

the Second Round Case, and asks this Court not to apply preclusion or give full faith and credit to the judgment in the Second Round Case (or any other state court action).  *See* FAC ¶¶ 57, 59.  In other words, the relief he seeks amounts to a declaration that the state court proceedings were invalid and violated his rights, such that he should be awarded damages and afforded a chance to relitigate the issues surrounding the parties' underlying property dispute and the propriety of Judge Nishimura's resolution of it on the merits.  Plaintiff's federal claims are thus barred under *Rooker-Feldman*.  *See Mothershed*, 410 F.3d at 607–08, *as amended on denial of reh'g* (July 21, 2005) (holding allegation that plaintiff was denied due process because defendants failed to apply state rule in bar disciplinary hearing constituted a challenge to a state-court decision in a particular case where the district court lacked jurisdiction, and barring § 1983 claim challenging a failure to provide summons in another proceeding because it constituted a particularized challenge to its results).

To the extent Plaintiff's federal claims implicate other Defendants, e.g., because they made certain arguments before Judge Nishimura and similarly did not disclose *Quinata*, they are inextricably intertwined with issues resolved by the state court because they depend on the theory that Plaintiff's harm stems from the state court errors in crediting these arguments.  *See Cooper*, 704 F.3d at 782 (holding alleged conspiracy among those involved in state proceedings was "a fig leaf for

12

taking aim at the state court's own alleged errors").  Finding in Plaintiff's favor on these claims would require this Court to determine that his rights were violated because the state courts' rulings and procedures were improper, and undercut the various state court rulings that there was no conflict or bias that needed to be disclosed or warranted disqualification and that the ruling on the merits in the Second Round Case could stand.

Plaintiff argues no Hawai'i court has considered his constitutional claims. But, as recounted above, he has raised these issues before those tribunals to no avail.  *See also* FAC ¶¶ 53, 66 (noting he filed a Motion for Reconsideration with the Hawai'i Supreme Court, asking it to enforce his rights under the U.S. Constitution, which was denied); *see also id.* ¶¶ 61–63, 67 (recounting Plaintiff's "diligent effort to have the Supreme Court of Hawaii and the ICA enforce [his] Constitutional and fundamental rights").  That no state court articulated the basis for the denial is immaterial.  *See Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003) ("The silence of the California courts does not indicate that they failed to consider the constitutional claims presented to them." (citation omitted)).  Such claims can also be barred under *Rooker-Feldman* although no state court actually decided them; the doctrine "precludes review of all state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional" because it "bars any suit that

seeks to disrupt or undo a prior state-court judgment, regardless of whether the state-court proceeding afforded the federal-court plaintiff a full and fair opportunity to litigate [his] claims." *Id.* at 901 (internal quotation marks, citations, and footnote omitted).  As discussed above, Plaintiff can only succeed on these claims if the Court concludes the procedures in state court and the results of those proceedings were erroneous.

Plaintiff's argument that his federal claims fall outside *Rooker-Feldman* because he seeks relief based only on Defendants' conduct rather than alleging a legal or factual mistake in a state court judgment is belied by the allegations in the FAC.  Indeed, in his Opposition, when claiming that he complains only about the wrongful acts of adverse parties, he primarily relies on the allegations supporting his state law claims regarding the underlying property dispute rather than those supporting his federal claims.[6]  *See* ECF No. 32 at 23.

Further, although Plaintiff's FAC frequently references Defendants'

---

[6]  In his Opposition, Plaintiff also argues that his § 1982 claim is based on Defendants refusing to consent to Plaintiff's assignment of the lease to an individual, Mr. Nguyen, because of Mr. Nguyen's race.  *See* ECF No. 32 at 29. But the FAC contains no such allegations.  Even if it had, Plaintiff concedes that crediting this claim would be just another way of declaring that the state court wrongly decided the issues before it—meaning it too would be barred under *Rooker-Feldman.  See id.* at 29–30 (noting Judge Nishimura concluded in the Second Round Case that Defendants had no knowledge Mr. Nguyen was potential assignee); *see also* ECF No. 36 at 21 n.7 (detailing Judge Nishimura's ruling, which was upheld by the ICA); *Cooper*, 704 F.3d at 783.

fraudulent concealment of the *Quinata* action, he fails to identify any evidence or argument he was prevented from presenting in the state court proceedings as a result of an opposing party's misconduct, which might otherwise make *Rooker-Feldman* inapplicable.  *See Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004) (noting federal court has jurisdiction over suit alleging cause of action for extrinsic fraud on a state court, where extrinsic fraud is conduct that prevents a party from presenting his claim in court).  Instead, Plaintiff raised these allegations regarding the non-disclosure of *Quinata* in the Second Round Case with Judge Nishimura, the ICA, and the Hawaiʻi Supreme Court—including in multiple separate appeals and a separate mandamus action, and again in the Fourth Round Case.[7]  Nor has Plaintiff responded to Defendants' argument that where, as here, the extrinsic fraud allegations have already been separately litigated in state court, the extrinsic fraud exception to the *Rooker-Feldman* doctrine does not apply.  *See Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859–60 (9th Cir. 2008).

For these reasons, *Rooker-Feldman* bars Plaintiff's federal claims and they must therefore be dismissed without prejudice to being raised in an appropriate forum.  *See Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988).  Although

---

[7]  More logically, Plaintiff fails to articulate how there can be fraud "on a state court" given the withheld information was already known to Judge Nishimura.

courts liberally grant leave to amend to pro se plaintiffs, the Court concludes that amendment here would be futile because it is clear that allegations of other facts consistent with the FAC could not cure this deficiency.[8]  *See Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1112 (9th Cir. 2019).  Given the Court lacks jurisdiction over Plaintiff's federal claims, it must also dismiss the state law claims because it has no discretion to exercise supplemental jurisdiction over such claims.[9]  *See* 28 U.S.C. § 1367(a); *Prather v. AT&T, Inc.*, 847 F.3d 1097, 1108 (9th Cir. 2017).

//

//

//

//

//

//

//

---

[8]  The Court notes that, although Plaintiff is proceeding pro se, he has emphasized his prior experience as a lawyer, touting his 40 years of experience as a trial lawyer and the fact that he served as a per diem judge in state court for over 18 years.  *See* ECF No. 33 at 28.

[9]  Because the Court concludes it lacks jurisdiction over Plaintiff's claims, it need not consider Judge Nishimura's separate motion that Plaintiff failed to state any claims against her, or that such claims are barred under judicial immunity.

## IV. CONCLUSION

For the foregoing reasons, the Attorney Defendants' Motion to Dismiss, ECF No. 15, is GRANTED and Plaintiff's First Amended Complaint is DISMISSED WITHOUT PREJUDICE. The Clerk of Court is directed to terminate any pending motions and close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, September 16, 2020.



Jill A. Otake
United States District Judge

Civil No. 20-00218 JAO-WRP, *Au v. Trustees of the Estate of Bernice Pauahi Bishop, et al.*; ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

17